Mr. Justice Clayton
delivered the opinion of the court.
This was a bill filed in the district chancery court at Natchez by a feme covert, by her next friend against her husband, for certain slaves, which, upon a verbal agreement of separation between them, had been delivered up by her husband for her benefit. The slaves belonged to the wife at the time of the marriage, which took place in 1841. The separation took place in 1846. Afterwards, D. L. Carter, the husband, instituted an action of replevin, in the circuit court of Wilkinson county, against the brother of Mrs. Carter, in whose possession the slaves then were, and employed her name in the suit, without her consent. The bill prays an injunction to the suit, and a re-delivery of the slaves to her. The vice-chancellor made a decree in conformity with the prayer of the bill, and the defendant appealed to this court.
It is unnecessary to decide, whether the agreement of separation was invalid, because not in writing. The authorities on the point are both ways. Clancy, Hus. & Wife, 42. It is clear that binding and valid agreements of separation, can only be made through the medium of a trustee. Clancy, 392; 2 Kent, Comm. 176. As there was no trustee in this instance, and as the agreement was directly between husband and wife, it cannot be specifically enforced even as to the property. This is not upon the ground of a want of jurisdiction over the subject. In almost every period of the English system of equity, the court of chancery, where a separation has already taken place between husband and wife by agreement, through the intervention of a third person, on the part of the wife, has compelled either party to pay any sum, or to perform any contract, stipu *62 lated to be paid or performed upon such separation. It has never assumed the power to force them to separate, or to live together, it only enforces the obligations undertaken by such agreements. In courts of law too similar relief is afforded, in a proper case. In a late case Justice Bayley said: “A system of jurisprudence so long acted on, cannot be overturned upon a vague notion, that it is inconsistent with public policy.” In another case Lord Eilenborough said: “The question appears to have been laid at rest for a, long period, by repeated decisions, and by the uniform practice of the court.” Clancy, 397, 405.
But in this cause there is no such agreement, as will lay the requisite foundation for the exercise of the jurisdiction.
The only other ground, on which the bill can possibly be sustained, is what is usually called the wife’s equity to a settlement out of her own estate. This is a well established head of equity jurisdiction, not easily traced to any distinct origin, but so consonant to the principles of justice, that it has been for a long time exercised without challenge or question. Its extent is to be looked for in the practice of the court. 2 Story, Eq. 635.
• This jurisdiction is exercised to compel a husband -to make an adequate settlement upon the wife, whenever he comes into equity to recover any portion of her equitable or trust estate. This is the earliest and simplest form of its exercise. But to prevent irreparable injury to the interests of the wife, the same power is now exercised, upon an application by or on behalf of the wife, when the husband is proceeding in the ecclesiastical court to recover a legacy or distributive share due to her, or in a court of law to recover any of her choses in action. 2 Story, Eq. 634, 42; 2 Kent, Comm. 139. But this jurisdiction is not exercised, when the husband has reduced the property to possession, in other words, when the legal title is united with actual possession. Mitchell v. Sevier, 9 Humph. 146.
- In the present case the husband once had the possession, but parted with it voluntarily, and has to go into a court of law to •.regain it. To do so, he is obliged by our statute to use the name *63 of his wife, and she is joined in the suit without her consent, in effect to recover the property from herself; for the defendant in the action of replevin is merely her bailee. The husband has sued to recover the possession, and, in principle, it is the same as if he had never been clothed with the possession. The common law gives the fortune of the wife to the husband, because of the obligation imposed on him to support her. 2 Story, 646; 1 Roper, Hus. & Wife, 275. When, as in the case before us, he fails to perform this duty, it is a ground to restrain him from the use of her name at law to recover her property, unless he will make a suitable provision for her. 2 Story, 634.
But the statute of this state passed in 1839, for the protection and preservation of the rights of married women, has also an important bearing. It may be well to say in the outset, that the rights of the parties must be governed by the act of 1839, not of 1846, for if the case fell within the latter act, there would not have been the slightest doubt of the right of the wife. This property was in the actual possession of the wife, at the time of the marriage in 1841, it was not a mere chose in action, and the case is in this feature unlike that of Clark v. McCreary, 12 S. & M. 352. The law of 1839 is in substance as follows: “ That slaves possessed by a woman at her marriage, thereafter shall be held and possessed by her, notwithstanding her coverture, as her separate property; but their management and control, the direction of their labor, and the receipt of the productions thereof, shall remain to the husband agreeably to the laws heretofore in force.” Hutch. Code, 497.
By the case of the Grand Gulf Bank v. Barnes, 2 S. & M. 165, it is settled, that whilst by this statute of 1839, the property itself is secured to the wife, the profits may be subjected to the debts of the husband. The only construction which can be placed on the statute, taking all the parts together, is that the possession of the slaves, as between the husband and wife, must be a joint one. She is to possess them as her separate property; he is to control and manage them and to receive the profits; their respective rights can only be preserved by regarding the possession to be joint.
*64 The statute which regulates the action of replevin directs, that “When chattels are wrongfully detained, the action may be brought by any person having the immediate right of possession.” Hutch. Code, 817. As against the wife, has the husband the immediate right of possession? He has not an exclusive right, and unless the presumption that his possession will be her possession, should be indulged contrary to the actual state of facts in the case, he cannot be permitted to recover, without a violation of her statutory right to hold and possess the slaves. On the established practice of courts of equity then, as above set forth, the court of chancery may interfere and compel the husband to make a settlement upon her, as he has no complete legal title to an exclusive possession.
In regard to the charge of adultery relied on in the answer, as a bar to relief, we do not think it can avail. Property settled by way of jointure is not forfeited by the adultery of the wife. Sidney v. Sidney, 3 P. Wms. 269; 2 Story, Eq. 646. The right secured to her under our statute, in reference to her own property, is quite as strong, and quite as far beyond the reach of subsequent contingencies, as settlements in the way of jointure. It may be said, however, in this case, that only the property itself, not its proceeds, is secured to the wife by the statute, and so the proceeds are not within the scope of this principle. That is true. But these proceeds in the present attitude of the cause, cannot be reached by the husband, without the aid of a court of equity. Under such circumstances, equity would not interfere upon his application, because he is at no charge for her maintenance. 2 Story, 646. The court will not at his instance strip her of all means of support, and thus render reformation hopeless, although it would not, at her instance, interfere in her behalf, as .to property to which he is entitled. As to such property, under such circumstances, it refuses to interpose at all, but leaves the parties as it finds them. Ibid.
On the established principles of equity jurisdiction, as above set forth, equity may interpose and compel the appellant to make a settlement upon the complainant, as he has no legal right to the exclusive possession. The amount and extent of *65 the settlement rest upon the sound discretion of the court, in view and contemplation of all the circumstances. 2 Kent, 140.
' In this case the vice-chancellor directed all the slaves to be delivered up to her. There was some evidence that she had contracted debts after the separation. The husband should be protected from all disturbance on account of them, and they should be charged on the proceeds of the property to his exoneration.
There is some controversy between the parties, whether the complainant has a fee simple absolute interest in the slaves, or only a life estate. If the former, the husband might perhaps be entitled to them, if he should survive her. The question depends upon the construction to be given to the will of Thomas Ford, under which she claims. This question we do not intend to decide in advance, because the contingency may not happen, and because those who may be ultimately interested are not parties in the cause. But the decree of the court should be so framed, as not to affect the rights or endanger the interests of any one, in the event of her death. As to the amount of property to be settled upon her by the decree, we shall give no directions, but leave it to the discretion of the vice-chancellor. He will extend it to a part or the whole of the property, as under the circumstances may seem just, after securing the husband against loss from debts contracted by her. The decree was erroneous in awarding the whole property to her, without providing such security against her debts, and without requiring that the property should not be removed beyond the jurisdiction of the court to the prejudice of ulterior interests.
For these errors the decree will be reversed, and the cause remanded for further proceedings, in accordance with this opinion. The injunction will, in the mean time, be continued in force.
Decree reversed.
Mr. Justice Smith, having been counsel in the court below, gave no opinion.